# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| WINDELL RUTHERFORD, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. <u>5:12-CV-350</u> |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF FORSYTH, MAYOR TYE | ) | |
| HOWARD, officially and individually, | ) | |
| and MAYOR JOHN HOWARD, | ) | |
| officially and individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Windell Rutherford ("Rutherford" or "Plaintiff"), files this Complaint against the City of Forsyth ("the City"); Mayor Tye Howard, in his official and individual capacities ("Mayor T. Howard"); and Mayor John Howard, in his official and individual capacities ("Mayor J. Howard") (collectively "Defendants") showing the Court as follows:

### INTRODUCTION

1.

Rutherford brings this action for equitable relief and monetary damages against Defendants for unlawful employment discrimination and retaliation.

Rutherford's claims are based on the following conduct by Defendants:  the deprivation of Plaintiff's rights under color of state law, regulations, custom or usage in violation of 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1981, and the violation of Plaintiff's rights as protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Plaintiff also alleges violations of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*

<u>JURISDICTION AND VENUE</u>

2.

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12101 *et seq.*, 28 U.S.C. §§ 1331, and 1343.

3.

This Court is a proper venue for the Rutherford's claims under 28 U.S.C. § 1391(b) and (c), because one or more of the Defendants reside in the Middle District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

<u>**PARTIES**</u>

4.

Plaintiff Windell Rutherford (African American) is a resident of the State of Georgia and subjects himself to the jurisdiction of this Court.

5.

Former-Mayor Tye Howard is a resident of the Middle District of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at his residence:  526 Virginia Street, Forsyth, Georgia 31029.

6.

Mayor John Howard is a resident of the Middle District of Georgia and is subject to this Court's jurisdiction. He may be served with process via personal service at his place of business:  26 North Jackson Street, Forsyth, Georgia 31209.

7.

Defendant City of Forsyth is a municipal corporation doing business in the Middle District of Georgia and is subject to this Court's jurisdiction.  The City may be served with process via personal service on Mayor John Howard at 26 North Jackson Street, Forsyth, Georgia 31209.

8.

Rutherford is and, at all times relevant hereto, was an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

9.

Rutherford is a person with a disability because he has an actual physical impairment causing substantial limitation in one or more major life activities, he has a record of impairment, and the City regarded him as having an impairment.

10.

The City of Forsyth is an employer within the meaning of the ADAAA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

**ADMINISTRATIVE PROCEEDINGS**

11.

Rutherford filed a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which he complains.

12.

Rutherford received a Notice of Right to Sue from the EEOC relating to his

charge of discrimination, charge number 410-2010-04625.

13.

This civil action is filed in the appropriate federal district court within ninety (90) days of the receipt of his Notice of Right to Sue.

### STATEMENT OF FACTS

14.

Rutherford began employment with the City of Forsyth as a Lineman in the Electrical Department in April 1998.

15.

Rutherford was promoted to Lead Lineman in 2002.

16.

Rutherford is and has always been a good, hardworking employee.

17.

Rutherford sustained a work-related injury in June 2006 which ultimately lead to him becoming disabled as defined by the ADAAA.

18.

In December 2006, City Clerk / Acting City Administrator Janice Hall called

Rutherford and asked him to return to work in January 2007.

19.

Hall told Rutherford that she was aware of his need for accommodation for his disability, but that she needed him to return to work.

20.

At the time, Rutherford was a Lead Lineman so many of his job duties were supervisory in nature and he could have performed those duties without accommodation. Accommodations would have allowed him to perform the remaining duties.

21.

The City refused to return Rutherford to the Lead Lineman position or accommodate his disabilities in that position.

22.

Electrical Superintendant Johnny Hodges said that he did not want Rutherford in his department because of his injury/disability.

23.

Rather, the City returned Rutherford to work in a modified, light duty position in the Public Works Department with no cut in pay.

-6-

24.

At the time Rutherford returned to work, it was undetermined whether Rutherford's disability and need for accommodation was permanent.

25.

Rutherford continued to work hard uneventfully until early 2010.

26.

The City continuously added duties to Rutherford's modified position.

27.

Some of the duties performed by Rutherford in this position included, but were not limited to, conducting weekly safety meeting for the Public Works Department, conducting safety meetings for the meter readers, administering the prison details that do work for the City including scheduling and attendance, conducting inventory of all equipment used by City workers, investigating accidents and filing and following accident reports, and maintaining employee medical leave documentation and assisting with the completion of insurance forms and claims.

28.

Rutherford was also put in charge of developing a hazardous materials safety manual, in addition to his other duties.

29.

In January 2010, Rutherford's supervisor, Public Works Director Alvin Randall, told Rutherford that "the City" came up with a new title of "Public Works Clerk" for his position.

30.

On April 26, 2010, Randall and then City Administrator Greg Popham tried to force Rutherford to sign a form saying that he would accept a demotion from Lead Lineman to Public Works Clerk with a more than 50% salary reduction.

31.

Councilman James Calloway suggested to Popham and Randall that they add additional job duties and change Rutherford's title to Safety Coordinator to more accurately reflect his job duties, but they refused.

32.

Rutherford grieved this discriminatory treatment but his grievance was denied.

33.

On June 2, 2010, Rutherford met with Randall and later spoke with Popham about returning to his job as Lead Lineman.

34.

Randall and Popham told Rutherford that if he could obtain a full medical release from his doctor by June 3, he could have his old job back.

35.

On June 3, Rutherford provided Randall and Popham with a full medical release, but Popham refused to accept it.

36.

Popham told Rutherford there were no openings for Linemen even though the City had always had 5 linemen and now only had 3 (all Caucasian).

37.

Rutherford requested to file a grievance and Popham told him that he had filed all of the grievances he was going to file.

38.

Rutherford requested and was granted a meeting with former-Mayor Tye Howard.

39.

Popham told Rutherford that he did not care what the Mayor said and that he did not care if Rutherford took legal action.

40.

Popham met with the Mayor right before Rutherford did.

41.

When Rutherford met with Mayor Tye Howard, Mayor Howard told Rutherford that he did not understand how Rutherford got a medical release and that he was afraid that if Rutherford returned to the Electrical Department that he would get hurt.

42.

Popham also told Rutherford that he did not want him as a Lineman because he could get hurt.

43.

The City allowed a Caucasian Lineman, Bob Teston, to work as a Lineman with medical restrictions and without a medical release.

44.

Rutherford was told that they would not accept Rutherford's medical release and that if Rutherford did not sign the demotion paperwork, that Rutherford was fired.

45.

Rutherford signed the demotion paperwork because he could not afford to lose his job.

46.

In late July or early August 2010 the City posted an open Lineman position.

47.

Rutherford applied for transfer to the Lineman position and was not selected.

48.

The position was given to two less qualified Caucasian males.

49.

Electrical Superintendant Johnny Hodges told Rutherford that he did not want Rutherford back in the Electrical Department because "all Linemen are white."

50.

On May 25, 2012, Councilman Calloway and City Administrator Thomas White proposed raises for Rutherford, Albert Chambliss, Felton Ross, and Kenneth Morehead.

51.

The raises included six months of retroactive pay.

52.

Mayor John Howard met with Rutherford and told him that he could not approve the raise because Rutherford had filed a charge of discrimination with the EEOC.

53.

Mayor Howard told Rutherford that City Attorney Bobby Melton told him that he could not "give [Rutherford] anything until the case is resolved."

54.

Mayor Howard approved the raises for Chambliss, Ross, and Morehead.

**Governmental and Decision Maker Liability**

55.

Mayor Tye Howard was, at times material to this Complaint and through the end of his term in December 2011, the highest City official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of  the City, including Rutherford.

56.

Mayor John Howard was, at times material to this Complaint beginning with in January 2012, the highest City official with authority to hire, fire, transfer,

demote, promote, discipline, and take other personnel actions affecting employees

of  the City, including Rutherford.

57.

Mayor Tye Howard's above-pled employment actions were not subject to,

and did not require, higher review or approval.  Defendant T. Howard was the

City's final decision maker with respect to each of the unlawful employment actions

giving rise to this Complaint.

58.

Mayor John Howard's above-pled employment actions were not subject to,

and did not require, higher review or approval.  Defendant J. Howard was the City's

final decision maker with respect to each of the unlawful employment actions

giving rise to this Complaint.

59.

Defendant T. Howard was the City's final policy maker with respect to each

of the unlawful employment actions giving rise to this Complaint.

60.

Defendant J. Howard was the City's final policy maker with respect to each

of the unlawful employment actions giving rise to this Complaint.

61.

Defendant T. Howard undertook all of the unlawful conduct giving rise to the Rutherford's claims while acting under color of state and local law.

62.

Defendant J. Howard undertook all of the unlawful conduct giving rise to the Rutherford's claims while acting under color of state and local law.

63.

At all times material to this Complaint, it was clearly established law that subjecting subordinates to race discrimination violates the Equal Protection Clause.

64.

At all times material to this Complaint, it was clearly established law that retaliating against subordinates filing charges of discrimination with the Equal Employment Opportunity Commission violates the Equal Protection Clause.

**Punitive Damages Allegations**

65.

Defendants T. Howard and J. Howard undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to the Rutherford and his federally protected rights.

-14-

66.

Additionally and in the alternative, Defendants T. Howard and J. Howard undertook all of the above-pled conduct with reckless disregard for Rutherford and his federally protected rights.

## COUNT I
## Violation of the ADAAA – Failure to Accommodate
### (Against Defendant City of Forsyth)

67.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

68.

Rutherford is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

69.

Rutherford is a person with a disability in that he has a physical impairment causing substantial limitation in one or more major life activities.

70.

At all times relevant hereto, Rutherford was able to perform the essential functions of his job with or without an accommodation.

71.

The City is an "employer" as defined by the ADAAA.

72.

Rutherford requested a reasonable accommodation that would have allowed him to perform the essential functions of his job as Lead Lineman.

73.

The City refused to allow Rutherford to be accommodated as a Lead Lineman but, instead, placed him in a modified position in the Public Works Department.

74.

In June 2010, the City refused to reinstate Rutherford to his Lead Lineman position, a position for which he was qualified, without a cut in pay.

75.

Rather, the City forced Rutherford, on threat of termination, to accept a 50% cut in pay.

76.

The City also refused to transfer Rutherford from Public Works to a Lineman position, a position for which he was qualified, and instead filled the positions with non-disabled employees.

77.

The City's actions violate the ADAAA, which prohibits intentional discrimination on the basis of disability.

78.

As a direct and proximate result of the City's intentional discrimination, Rutherford has suffered out of pocket losses and the City has deprived Rutherford income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

79.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

80.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT II**
**Violation of the ADAAA – Regarded as Disabled**
**(Against Defendant City of Forsyth)**

81.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

82.

Rutherford is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102(1)(C) because Defendant regarded him as a person with an impairment as defined by the ADAAA.

83.

The City is an "employer" as defined by the ADAAA.

84.

The City was aware of Rutherford's disability.

-18-

85.

Despite his qualifications for his position, the City intentionally refused to reinstate Rutherford to his position as Lead Lineman, refused to transfer him to a position as Lineman when he returned from medical leave and, later, received a full release to duty, and cut Rutherford's pay by 50% because of Rutherford's impairments in favor of a non-impaired, non-disabled person.

86.

Mayor Tye Howard told Rutherford that he did not understand how Rutherford got a medical release and that he was afraid that if Rutherford returned to the Electrical Department that he would get hurt.

87.

City Administrator Popham also told Rutherford that he did not want him as a Lineman because he could get hurt.

88.

The City's actions violate the ADAAA, which prohibits intentional discrimination on the basis of disability.

89.

As a direct and proximate result of the City's intentional discrimination, Rutherford has suffered out of pocket losses and the City has deprived Rutherford income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

90.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

91.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT III**
**Retaliation in Violation of the ADAAA**
**(Against Defendant City of Forsyth)**

92.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

93.

Rutherford is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

94.

Rutherford is a person with a disability inasmuch as he has a physical impairment causing substantial limitation in one or more major life activities.

95.

At all times relevant hereto, Rutherford was able to perform the essential functions of his job with or without an accommodation.

96.

The City is an "employer" as defined by the ADAAA.

97.

Between January 2007 and the present, Rutherford engaged in protected

activity when he requested accommodations for his disability from the City, requested reinstatement to his position as Lead Lineman, and requested transfer to a Lineman position.

98.

Rutherford again engaged in protected activity when he filed a charge of discrimination with the Equal Employment Opportunity Commission.

99.

The City retaliated against Rutherford by refusing to transfer him to a Lineman position, by cutting his pay by 50%, and by refusing him a pay raise because he filed an EEOC charge.

100.

The City's actions violate the ADAAA, which prohibits retaliation for engaging in protected activity.

101.

As a direct and proximate result of the City's intentional discrimination, Rutherford has suffered out of pocket losses and the City has deprived Rutherford income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

102.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

103.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT IV**
**DENIAL OF EQUAL PROTECTION**
**OF THE LAWS IN VIOLATION OF THE**
**FOURTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**(Against Defendant City of Forsyth)**

104.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

105.

Rutherford is a member of a protected class and was not accommodated in his Lead Lineman position, was not reinstated to Lead Lineman, was not transferred into available Lineman positions, and his salary was cut 50% because of his race.

106.

Caucasian employees with medical restrictions were permitted to work as Linemen with accommodations and without medical releases.

107.

In addition, less qualified Caucasian employees were hired to fill the open Lineman positions for which Rutherford applied for transfer.

108.

The City discriminated against Rutherford on the basis of his race by refusing to reinstate Rutherford to Lead Lineman or transfer Rutherford to Lineman instead promoting and hiring less qualified Caucasian employees as part of a larger scheme, policy and practice of discrimination on the basis of race.  It did so in violation of clearly established constitutional and statutory authority that such actions are a violation of the law.

109.

The City took these actions as part of an unofficial government policy or custom which discriminates against Caucasian employees.  Defendant took these actions with knowledge that they were in clear violation of constitutional and federal statutory law.

110.

The City's conduct in refusing to reinstate Rutherford to Lead Lineman or transfer Rutherford to Lineman on the basis of his race and, instead, promoting and hiring less qualified Caucasian employees violates Rutherford's right to the equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

111.

The City proximately caused this violation of Rutherford's rights and so acted under color of the state law and local ordinances, regulations, customs, and usages of the City of Forsyth in violation of 42 U.S.C. § 1983.

112.

As a direct and proximate result of the City's intentional discrimination, Rutherford has suffered out of pocket losses and the City has deprived Rutherford

income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

113.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

114.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT V**
**<u>RACE DISCRIMINATION UNDER TITLE VII</u>**
**(Against Defendant City of Forsyth)**

115.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

116.

Rutherford is African American.

117.

The City's failure to accommodate Rutherford, failure to reinstate Rutherford to his position as Lead Lineman, failure to transfer him from Public Works Clerk to Lineman, and reduction of his salary was based on his race.

118.

The City conduct in discriminating against Rutherford because of his race violates Title VII.

119.

As a direct and proximate result of the City's intentional discrimination, Rutherford has suffered out of pocket losses and the City has deprived Rutherford income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

120.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

121.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT VI**
**<u>RETALIATION IN VIOLATION OF TITLE VII</u>**
**(Against Defendant City of Forsyth)**

122.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

123.

The City failed to reinstate Rutherford to Lead Lineman, failed to transfer Rutherford to open Lineman positions, reduced Rutherford's salary 50%, and failed to grant Rutherford a pay raise in retaliation for his complaints that the City had engaged in illegal discrimination based on his race in violation of Title VII.

124.

As a direct and proximate result of the City's retaliation, Rutherford has suffered out of pocket losses and the City has deprived Rutherford income in the form of wages, prospective retirement benefits, social security, and other benefits due him, all in an amount to be established at trial.

125.

In addition, the City's actions have caused, continue to cause, and will cause Rutherford to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

126.

Rutherford is also entitled to reinstatement to the position of Lead Lineman and restoration of his salary to $22.50/hour and, if reinstatement is not feasible, Rutherford is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VII
## RACE DISCRIMINATION
## IN VIOLATION OF 42 U.S.C. § 1981 AND § 1983
### (Against all Defendants)

127.

Rutherford incorporates by reference the preceding Paragraphs as if fully

restated herein.

128.

Defendants' conduct constitutes unlawful discrimination on the basis of race

in violation of 42 U.S.C. § 1981.

129.

Pursuant to 42 U.S.C. § 1981 as effectuated by 42 U.S.C. § 1983, Rutherford

is entitled to declaratory relief, injunctive relief, compensatory damages, punitive

damages, attorney's fees, and all other appropriate damages, remedies, and other

relief against Defendants because Defendants discriminated against Rutherford on

the basis of race as part of a larger scheme, policy and practice and in violation of

clearly established law.

130.

As a direct and proximate result of Defendants' violation of 42 U.S.C. §

1981 and § 1983, Rutherford has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT VIII
## RETALIATION
## IN VIOLATION OF 42 U.S.C.§ 1981 AND § 1983
### (Against all Defendants)

131.

Rutherford incorporates by reference the preceding Paragraphs as if fully restated herein.

132.

The Defendants' actions in failing to reinstate Rutherford to Lead Lineman, failing to transfer Rutherford to open Lineman positions, cutting Rutherford's pay by 50%, and failing to grant Rutherford a pay raise following his complaints of discrimination were committed with reckless disregard for Rutherford's right to be free from discriminatory treatment on account of his opposition to discriminatory practices and in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

133.

The effect of Defendants' above-mentioned acts has been to deprive Rutherford of equal employment opportunities and benefits due to him because of

his willingness to oppose such discriminatory practices.

134.

The actions taken against Rutherford have caused him to suffer both monetary and non-monetary damages.

135.

Accordingly, Rutherford is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of his rights under 42 U.S.C. § 1981, which rights are protected from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

<strong><u>RELIEF</u></strong>

Plaintiff respectfully requests a trial by jury on all Counts in the Complaint and that this Court:

A.     Issue a declaratory judgment that Defendants' acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured under Title VII, 42 U.S.C §§ 1981 and 1983, and the ADAAA;

B.     Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates

against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII, 42 U.S.C §§ 1981 and 1983, and the ADAAA;

C.     Grant Plaintiff judgment in his favor and against Defendants under all Counts of this Complaint;

D.     Order Defendants to make Plaintiff whole by reinstating him to Lead Lineman, and providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

E.     Order Defendant to compensate Plaintiff for mental and emotional damages suffered as a result of Defendants' unlawful and discriminatory acts;

F.     That the Court award Plaintiff punitive damages against Defendants T. Howard and J. Howard in an amount to be determined by the trier of fact;

G.     That the Court award Plaintiff his costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12101, and other applicable laws;

H.     Grant Plaintiff a jury trial on all issues so triable; and

I.     Grant such additional relief as the Court deems proper and just.

Respectfully submitted,

s/ Cheryl B. Legare
Georgia Bar No. 038553
cblegare@buckleyklein.com

BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street NE
Atlanta, Georgia  30309
Telephone: 404-781-1100
Facsimile:  404-781-1101

Attorneys for Plaintiff